UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM OLIPHANT,

      Plaintiff,

vs.                           **COMPLAINT**

CENTRAL HUDSON VALLEY BOARD OF
GIRL'S SOFTBALL OFFICIALS, INC. AND
GARY CARTER, PRESIDENT,

      Defendants.

-------------------------------------------------------x

**JUDGE McMahon**

'05 CIV 10119

I. **PARTIES**

1. Plaintiff William Oliphant is an African-American male, of legal age, who resides in the County of Orange, within this judicial district.

2. Defendant Central Hudson Valley Board of Girl's Softball Officials, Inc. [CHVBGSO] is a corporation organized to certify officials to umpire girls' softball games in the Central Hudson Valley. It does business within this judicial district.

3. At all relevant times, defendant Gary Carter has been President of CHVBGSO and resides in the County of Orange.

II. **JURISDICTION**

4. As plaintiff contends that defendants intentionally violated his civil rights as protected by federal law, this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and over plaintiff's pendent or supplemental claims pursuant to 28 U.S.C. sec. 1367. 42 U.S.C. sec. 1988 provides this Court with jurisdiction and authority to award plaintiff attorneys fees and costs.

III. **STATEMENT OF FACTS**

5.  At all times relevant hereto, plaintiff qualified to referee girls' softball games upon assignment from the Orange County Inter-scholastic Athletic Association [OCIAA].

6.  At all times relevant hereto, plaintiff was a dual member of umpiring associations in Rockland and Orange Counties.

7.  In January 2004, when plaintiff explained that one reason he was having trouble with other umpires which might be racial in origin, defendant Carter [hereinafter "Carter"], President of CHVBGSO, responded, "Welcome to the white man's world."

8.  In February 2004, plaintiff took and passed the test given by the New York State Softball Officials, Inc., demonstrating his proficiency to umpire baseball and softball.

9.  Plaintiff also attended organizational meetings concerning softball rules interpretation on January 8, February 9, April 14 and May 6, 2004 under the auspices of the Rockland County Umpires Association, which handled certification for softball and baseball umpires.

10.  Alan Zuckerman, secretary of the latter association, so reported to defendants on May 17, 2004.

11.  Despite receipt of Zuckerman's letter attesting to plaintiff's passing the relevant test for 2004, on June 27, 2004, CHVBGSO, through defendant Carter, advised plaintiff that he had "forfeited" his membership in that organization.

12.  On June 27, 2004, Carter refunded plaintiff's dues for the 2005 season for CHVBGSO.

13.  In August 2004, in receipt of Carter's letter of June 27, 2004 [which was sent to the incorrect address], plaintiff protested his expulsion from CHVBGSO, accused Carter and other

officers of acting in a biased manner and demanded reinstatement to full privileges and schedule for 2005 season.

14. In response, more than one month later, Carter reiterated plaintiff's suspension, returned plaintiff's check in payment for dues for the 2005 season and advised plaintiff of the process by which he could seek reinstatement as an umpire.

15. Carter also blamed the Rockland County Association for failing to file plaintiff's test scores and record of meeting attendance with the state accrediting body, leading to his suspension.

16. In fact, neither plaintiff nor the Rockland County Association had ever requested that Orange County's association desist from being plaintiff's home group for purposes of making all state filing requirements, a function CHVBGSO had previously performed on plaintiffs behalf..

17. On December 31, 2004, in meeting with plaintiff, Carter admitted that CHVBGSO switched plaintiff's home county to Rockland without advising him or the Rockland Association, thus causing the failure to file papers with the state association.

18. By letter dated January 1, 2005, plaintiff specifically requested that CHVBGSO reinstate him to good standing for 2005.

19. On January 5, 2005, in a letter written to the State Association on behalf of CHVBGSO, Carter suggested that Rockland had either failed to properly report plaintiff's tests and attendance at meetings or "someone is falsifying reports to our Board about Mr. Oliphant."

20. On January 8, 2005, Carter advised Oliphant that a majority of the executive committee of CHVBGSO "has voted against reinstating your membership".

21. On January 14, 2005, plaintiff again appealed to Carter to overturn his suspension.

22. On January 21, 2005, Zuckerman advised the President of the New York State Softball Officials Association that plaintiff had fulfilled all requirements for membership but had been subjected to disparate treatment by CHVBGSO.

23. On January 21, 2005, plaintiff's counsel wrote Carter demanding a non-discriminatory reason for Oliphant's suspension and noting that Caucasian members have failed to attend the required number of meetings and have not been suspended.

24. On January 25, 2005, following receipt of the letter from plaintiff's counsel, Carter wrote Oliphant that "I will be notifying the OCIAA office to make available to you an availability sheet for the 2005 softball season."

25. In the same letter and without any form of customary due process, Carter imposed a $25 fine on Oliphant "for missing the mandatory 2004 in-season meeting."

26. In the same letter, for the first time, Carter notified plaintiff that CHVBGSO "had received two written ethics complaint against you from the 2004 season."

27. In response to Carter's letter, plaintiff paid his dues, but not the fine.

28. On January 30, 2005, Carter wrote plaintiff's counsel, "Mr. Oliphant wants the privileges of membership without the responsibilities that go with it.  That is a position that the leadership and the membership of CHVBGSO Inc. will not allow."

29. After sending plaintiff the schedule, because of defendant CHVBGSO and Carter's acts and omissions, plaintiff was able to umpire very few softball games during the 2005 season.

30. In April 2005, plaintiff was unable to attend defendant CHVBGSO meetings due to the death and burial of his mother and do advised the organization.

-4-

31. On or about June 2, 2005, Carter advised plaintiff that he would be suspended because he missed a meeting due to the death of his mother.

32. On June 19, 2005, Carter advised plaintiff that he had been suspended for the 2006 season because of two incidents from 2004 [about which plaintiff never had any form of due process hearing], his failure to pay an unauthorized fine for missing a meeting in 2004 and for failing during the prior five years to meet all requirements in a timely fashion."

33. Plaintiff's suspension was caused by defendants' intentional racial discrimination and represented disparate treatment not applied to other white members.

34. Plaintiff is one of two black members in defendant corporation, a very distinct minority of the membership.

35. Defendant corporation has not made any known outreach to minorities so as to include them in umpiring.

36. Plaintiff satisfied all legitimate requirements for membership in CHVBGSO between 2004-06.

37. Defendants suspended plaintiff for pretextual reasons, seeking to make intentional racial animus and discriminatory motives.

38. The conduct defendants have engaged in has caused plaintiff economic loss as well as mental anguish, loss of income, depression, anger, distress and humiliation.

## IV. **CAUSES OF ACTION**

39. Plaintiff incorporates paras. 1-38 as if expressly re-written herein.

40. By suspending plaintiff from membership and thereby making it impossible for him to get umpiring assignments, defendants discriminated against him on the basis of race in

-5-

violation of 42 U.S.C. sec. 1981, as amended.

41. By suspending plaintiff from membership and thereby making it impossible for him

to get umpiring assignments, defendants discriminated against him on the basis of race in

violation of section 296 of the Executive Law of the State of New York.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that:

a) this Honorable Court accept jurisdiction over this matter;

b) empanel a jury to hear and decide this matter;

c) award to plaintiff compensatory and punitive damages against defendants;

d) award to plaintiffs the reasonable attorneys' fees and costs arising from this matter;

e) enjoin defendants from engaging in further racial discrimination or disparate treatment

of him and

f) enter any other order the interests of justice require.

Respectfully submitted,

MICHAEL H. SUSSMAN (3497)

SUSSMAN LAW OFFICES
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff

Dated: November 9, 2005